# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ANDREW J. MILLER,**

              **Plaintiff,**

**vs.**                                                   No.  CIV-10-171 WJ/LFG
                                                          **CONSOLIDATED WITH**
**DUGGERS TOW YARD, et al.,**                             No. 09-cv001124 WJ/WPL
                                                           **(Miller v. Hammer, et al.)**
              **Defendants.**


**and**

**ROBERTA BEALE,**

              **Plaintiff-in-Intervention,**

**vs.**

**ANDREW J. MILLER,**

              **Defendant-in-Intervention.**


## CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM BRIEF IN SUPPORT

**COME NOW**, Defendants M.G. Barreras, Chadwick J. Melvin, Carla Perez,

Kevin Rowe and the City of Albuquerque (hereinafter "City Defendants"), by and

through Assistant City Attorney Benjamin I. Sherman, and hereby state the following for

their Motion for Summary Judgment and Brief in Support, which Plaintiff opposes:

**INTRODUCTION**

On August 7, 2008, Plaintiff Andrew Miller pled guilty to one count of Racketeering and one count of Conspiracy to Commit Racketeering.  In addition, he pled no contest to one count of Racketeering, one count of Conspiracy to Commit Racketeering, one count of Forgery over $20,000, and one count of Fraud over $20,000 and was sentenced to 42 years in prison.  [See D.A. Def. Ex. 5].  This case involves Plaintiff Miller's claim that City Defendants violated his right to due process in the forfeiture of property that was seized during the criminal investigation.  [See Plaintiff's Amended Complaint ¶ 53; Doc. 60, Memorandum Opinion and Order].

Plaintiff's claims against City Defendants for a violation of procedural due process fail as a matter of law for the following reasons:  (1) Plaintiff fails to allege any municipal policy or custom that is the moving force behind any procedural due process violation, and accordingly, he cannot maintain a municipal liability claim against the City of Albuquerque;  (2) The individual City Defendants are entitled to qualified immunity because Plaintiff cannot demonstrate that any individual City Defendant committed a clearly established constitutional violation; and (3) City Defendants did not personally participate in the forfeiture of Plaintiff's property and thus did not personally participate in any alleged constitutional infraction.

Plaintiff also alleges a claim for conversion against City Defendants. [See Doc. 62, Am. Civ. Compl. ¶ 15].  This claim fails as a matter of law because Conversion is not a tort for which immunity has been waived by the New Mexico Tort Claims Act.

## STATEMENT OF UNDISPUTED FACTS

1.   On July 12, 2006, Plaintiff Andrew Miller was arrested and arraigned on multiple counts of financial crimes.  [See Doc. No. 111 Memorandum Opinion and Order Granting Motion to Intervene]

2.   In 2006, Sergeant Marigrace (hereinafter "M.G.") Barreras was a detective with the Albuquerque Police Department.   The Albuquerque Police Department assigned Sergeant Barreras to head up an investigation of fraud and/or embezzlement involving Plaintiff.  [See D.A. Def. Ex. 10; Affidavit of M.G. Barreras, ¶ 3 & 4; Doc. No. 62, Am. Civ. Compl. at ¶ 18]

3.   As part of the criminal investigation involving Plaintiff, the Albuquerque Police Department procured search warrants for nineteen vehicles believed to be purchased by Plaintiff.  [See D.A. Def. Ex. 10, Affidavit of M.G. Barreras, ¶ 5]

4.   Several vehicles were seized as evidence in the ongoing criminal investigation against Plaintiff.  [See Id., ¶ 6]

5.   Sergeant Barreras conferred with Defendant District Attorneys Robin Hammer and Mark Drebing in obtaining warrants and other relevant paperwork during the investigation and execution of the warrants.  Defendants Hammer and Drebing represented the State of New Mexico in the prosecution of Andrew Miller, Plaintiff in this lawsuit, in the matters State v. Miller, D-202-CR-2006-3823 and State v. Miller, D-202-CR-2006-3827.  [See Doc. 62, Am. Civ. Compl. at ¶ ¶ ¶ 21, 27, 31 & 32]

6.   On or about August 7, 2008, Andrew Miller entered a guilty plea regarding both of these matters.   [ See D.A. Def. Ex. 5, Repeat Offender Plea and Disposition

Agreement] Specifically, Mr. Miller pled guilty to one count of Racketeering and one count of Conspiracy to Commit Racketeering and pled no contest to one count of Racketeering, one count of Conspiracy to Commit Racketeering, Fraud over $20,000, and Forgery over $20,000. [See Id.]

7.   At an August 7, 2008 hearing, Mr. Miller admitted to the Court:

> While operating a business called 'Legal Aid Services," I received a call from a client by the name of Roberta Beal (sic) and met with her in a hospital. Upon meeting Ms. Beal (sic) at the hospital, her and I had some conversations over a period of time...[W]ithin the first couple of visits, it was determined by myself that Ms. Beal (sic) was financially able to help in some endeavors that I thought would be good. So I used that knowledge to gain access to her finances, and ultimately , used them, misappropriated them, for my own use.

> [See D.A. Def. Ex. 6, August 7, 2008 hearing in <u>State v. Miller</u>, CR-2006-3238 and CR-2007-3827]

8.   On August 7, 2008, the Honorable Kenneth H. Martinez, District Court Judge for the Second Judicial District of New Mexico, accepted the Repeat Offender Plea and Disposition Agreement entered into between Plaintiff and the State of New Mexico. [See D.A. Def. Ex. 5]

9.   Judge Martinez sentenced Mr. Miller to 42 years in prison for the matters to which he pled guilty, including but not limited to the money he misappropriated from Roberta Beale. [See D.A. Def. Ex. 1, Affidavit of R. Hammer, ¶ 13]

10.  On August 7, 2008, the Honorable Kenneth H. Martinez also signed a Stipulated Order to Forfeit in the matters <u>State v. Miller</u>, CR 2006-3283 and CR 2007-3827. [See D.A. Def. Ex. 7]

11.     Per the Stipulated Order to Forfeit, the following property was forfeited pursuant

to New Mexico's Racketeering statute: (1) all vehicles purchased using Roberta

Beale's money; and, (2) all computers used in the operation of both Racketeering

schemes charged in CR 2006-3283 and CR 2007-3830.  [See Id.]

12.     In his Amended Civil Complaint, Plaintiff alleges that at the time of his arrest he

was the legal owner of the following nine vehicles:

      (1)     2000 BMW 528, VIN WBADM6340YGV03714

      (2)     2004 Lincoln Navigator, VIN 5LMFU28R04LJ21847

      (3)     1995 Mercedes Benz S Class, VIN WDBGA51E3SA270581

      (4)     1999 Volvo S80, YV1TS90D8X1024849

      (5)     1996 Chevy Suburban, VIN 3GNFK16RXTG143304

      (6)     1995 Suzuki Sidekick, VIN 2S3TD03V2S6405443

      (7)     2001 Cadillac Deville, VIN 1G6KD54Y71U281785

      (8)     1994 Cadillac Seville, VIN 1G6KS52Y3RU809844

      (9)     1993 Ford Santara Coachman RV, VIN 1FDKE30G7PHA74953

[See Doc. 62, Am. Civ. Compl; D.A. Def. Ex. 8, Plaintiff's Supplemental
Responses to Defendant Hammer's First Set of Interrogatories and Requests for
Production to Plaintiff, Supplemental Response to Request for Production No. 3]

13.     There were eight vehicles that were towed by various towing companies to private

lots and eventually sold at public auctions:

(1)     2000 BMW, VIN WBADM6340YGV03714: Towing Company Dugger's

Service Inc. filed a Notice of Mechanic's or Landowner's Lien on July 28,

2006.  On September 20, 2006, Dugger's Service, Inc. sold the vehicle to

itself for the amount of its lien.  [See D.A. Def. Ex. 11 -1, MVD Docs]

(2)    2004 Lincoln Navigator, VIN 5LMFU28R04LJ21847: Acme Towing and
Recovery, Inc. Filed a Notice of Mechanic's or Landowner's Lien on July
17, 2006.  On September 6, 2006, Acme Towing sold the vehicle to itself
for the amount of its lien.  [see D.A. Def. Ex.11-2, MVD Docs]

(3)    1995 Mercedes Benz S Class, VIN WDBGA51E3SA270581: Acme
Towing filed a Notice of Mechanic's or Landowner's Lien on August 17,
2007.  On October 10, 2007, Acme Towing sold the vehicle to itself for
the amount of its lien.  [See D.A. Def. Ex. 11-3, MVD Docs]

(4)    1999 Volvo S80, YV1TS90D8X1024849: Acme towing filed a Notice of
Mechanic's or Landowner's Lien on August 17, 2007.  On October 10,
2007, Acme Towing sold the vehicle to itself for the amount of its lien.
[See D.A. Def. Ex. 11-4, MVD Docs]

(5)    1996 Chevy Suburban, VIN 3GNFK16RXTG143304: Acme Towing filed
a Notice of Mechanic's or Landowner's Lien on August 17, 2007.  On
October 10, 2007, Acme Towing sold the vehicle to itself for the amount
of its lien.  [See D.A. Def. Ex. 11-5, MVD Docs]

(6)    1995 Suzuki Sidekick, VIN 2S3TD03V2S6405443: Acme Towing filed a
Notice of Mechanic's or Landowner's Lien on August 17, 2007.  On
October 10, 2007, Acme Towing sold the vehicle to itself for the amount
of its lien.  [See D.A. Def. Ex. 11-6, MVD Docs]

(7)    1994 Cadillac Seville, VIN 1G6KS52Y3RU809844:  Acme Towing filed
a Notice of Mechanic's or Landowner's Lien on August 17, 2007.  On

October 10, 2007, Acme Towing sold the vehicle to itself for the amount of its lien.  [See D.A. Def. Ex. 11-7, MVD Docs]

(8)    1993 Ford Santara Coachman RV, VIN 1FDKE30G7PHA74953:  Acme Towing filed a Notice of Mechanic's or Landowner's Lien on August 17, 2007.  On October 10, 2007, Acme Towing sold the vehicle to itself for the amount of its lien.  [See D.A. Def. Ex. 11-8, MVD Docs]

14.    According to the Notices of Mechanic's or Landowner's Liens, the towing company/lien claimants sent the Notices of Mechanic's or Landowner's Lien to the registered owner of the vehicles.  [See D.A. Def. Ex. 11, sub-exhibits 1-8]  The Notices also give notice that if the sum of the lien "is not paid within ten (10) days from receipt of this notice" the vehicle will be advertised for sale and sold "as provided by law to satisfy the debt."  [See Id.]

15.    The registered owners of the eight vehicles who were provided Notice of Mechanic's or Landowner's Liens were the following individuals:

(1)    2000 BMW 528, VIN WBADM6340YGV03714: Andrew J. Miller or Antionette M. Tenorio.  [See D.A. Def. Ex. 11 -1, MVD Docs]

(2)    2004 Lincoln Navigator, VIN 5LMFU28R04LJ21847: Andrew J. Miller. [See D.A. Def. Ex. 11-2, MVD Docs]

(3)    1995 Mercedes Benz S Class, VIN WDBGA51E3SA270581:  Andrew J. Miller.  [See D.A. Def. Ex. 11-3, MVD Docs]

(4)    1999 Volvo S80, YV1TS90D8X1024849: Andrew M. Miller or Virginia R. Harris.  [See D.A. Def. Ex. 11-4, MVD Docs]

(5)     1996 Chevy Suburban, VIN 3GNFK16RXTG143304:  Andrew J. Miller. [See D.A. Def. Ex. 11-5, MVD Docs]

(6)     1995 Suzuki Sidekick, VIN 2S3TD03V2S6405443: Mary Mochan.  [See D.A. Def. Ex. 11-6, MVD Docs]

(7)     1994 Cadillac Seville, VIN 1G6KS52Y3RU809844: Thomas N. Brady or Monica E. Brady.  [See D.A. Def. Ex. 11-7, MVD Docs]

(8)     1993 Ford Santara Coachman RV, VIN 1FDKE30G7PHA74953: Andrew J. Miller.  [See D.A. Def. Ex.11-8, MVD Docs]

16.   The 2001 Cadillac Deville, VIN 1G6KD54Y71U281785 was not located and, therefore, not seized by the Albuquerque Police Department.  [See D.A. Def. Ex. 10, Aff. Barreras at ¶ 7]

17.   Assistant District Attorney ("ADA") Hammer stated that "it is [her] understanding criminal defendants can agree to forfeit property pursuant to a Plea and Disposition Agreement without requiring proceedings pursuant to the New Mexico Forfeiture Act.   [See City Def.'S Ex. B, Defendant Hammer's Supplemental Answers and Responses to Plaintiff's First Set of Interrogatories, Requests for Production and Requests of Admissions, Supplemental Answer to Interrogatory No. 7]

18.   Assistant District Attorney Hammer stated that if "property is seized by law enforcement as evidence in a criminal matter, the New Mexico Forfeiture Act plays no role regarding disposal of property seized as evidence."   [See Id.] A.D.A. Hammer also stated that she is "not aware of any requirement under New Mexico or Federal law to follow any of [New Mexico Forfeiture Act] provisions

if a criminal defendant agrees to forfeit property pursuant to a Plea and Disposition Agreement." [See Id.]

19.    Sergeant Barreras stated that her role as a lead detective is to sort through property that is seized to decide which property should be kept as evidence and which property should be released back to its original owner. She also stated that she has no knowledge as to how property seized pursuant to a search warrant is forfeited or disposed of as she never dealt with the forfeiture of property. [See City Defendants' Ex. A, Defendant Marigrace Barreras' Answers, Responses and Objections to Plaintiff's First Set of Interrogatories, Requests for Production, and Requests for Admissions, Answer to Interrogatory No. 8]

20.    Plaintiff retained his long-time attorney Donald F. Kochersberger III to represent him in the criminal matter and the attorney was in contact with the Second Judicial District Attorney's office regarding the status of the vehicles. [See Doc. 62, Am. Civ. Compl. at ¶¶ 28, 30]

## LEGAL ANALYSIS/ARGUMENT

Plaintiff claims that City Defendants failed to comply with New Mexico's Forfeiture act, specifically NMSA § 31-27-5, which requires that a complaint for forfeiture be filed within thirty (30) days of a seizure. [See Doc. 62, Am. Civ. Compl. at ¶ 44; NMSA 1978 § 31-27-5]. Specifically, Plaintiff alleges that City Defendants' actions deprived him of his due process property rights with respect to the nine vehicles mentioned in his Amended Civil Complaint. Plaintiff also asserts a claim for conversion. [See Doc. 62, Am. Civ. Compl. at ¶ 15]. Plaintiff's claim that City Defendants deprived him of his constitutional rights to due process fails for the reasons stated below.

I.      **Plaintiff Failed To State a Cognizable Claim Against the City Of Albuquerque**

Plaintiff does not allege that a constitutional deprivation is due to an established municipal policy, custom or procedure. Instead, plaintiff alleges that Defendants failed to follow the New Mexico Forfeiture Act in the disposal of the property in question.

A plaintiff suing a municipality under Section 1983 must show: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." Myers v. Oklahoma County Bd. Of County Commissioners, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978)).   Although Plaintiff may have alleged that individual City Defendants violated his rights to procedural due process, his Amended Civil Complaints makes no mention of any municipal policy or custom that was the moving force behind such deprivation.   [See Doc. 62, Am. Civ. Compl.]   In order to warrant liability under Section 1983 against a municipality, any alleged policy must be a "policy, statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality's officers.   See Lankford v. City of Hobart, 73 F.3d 283, 286 (10th Cir. 1996).   A policy giving rise to liability cannot be established merely by identifying a policymaker's conduct that is properly attributable to the municipality, rather a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury.   Board of County Com'rs of Bryan County, Okl v. Brown, 520 U.S. 397, 404-05 (1997).   Because Plaintiff did not allege any municipal policy or custom that was the moving force behind any alleged constitutional violation, Plaintiff's claim against the City of Albuquerque fails as a matter of law.

II.     **The Individual Officers Are Entitled to Qualified Immunity**

Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1255 (10th Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Persons sued in their individual capacity generally are entitled to qualified immunity unless it is shown that their actions violated a specific statutory or constitutional right and that the rights which they allegedly violated were clearly established at the time of the conduct at issue, Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir 1992).  Once a defendant raises the qualified immunity defense, then the plaintiff has the burden "to show *both* that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988) (emphasis added).

A plaintiff "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it."  Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642, 645 (10th Cir. 1988).  A plaintiff "must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." Albright v. Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995); Saucier v. Katz,

533 U.S. 194, 201 (2001) (holding that the "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition").

### A. Plaintiff Failed to Demonstrate that City Defendants' Actions Violated his Statutory or Constitutional Rights

As discussed earlier, when a claim of qualified immunity is raised in a defendant's motion for summary judgment, the plaintiff must show the defendant's actions violated a specific statutory or constitutional right.  Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir.1995).   In the present case, Plaintiff lacks standing to claim any violation of due process rights afforded under the New Mexico Forfeiture Act because he agreed to forego such rights through his Stipulated Order of Forfeiture.  In other words, Plaintiff waived any rights available to him and therefore, Plaintiff cannot maintain a claim for the violation of statutory or constitutional rights.

### i. Plaintiff Waived Any Rights Afforded Under the New Mexico Forfeiture Act

It is undisputed that the August 7, 2008, Stipulated Order of Forfeiture was a part of the plea agreement entered between the parties on the same day.  [See City Def.s' Ex. B, Supplemental Answer to Interrogatory No. 7].  Because Defendant agreed to surrender possession of the property in the Stipulated Order of Forfeiture, any procedural irregularity in following the New Mexico Forfeiture Act's provisions hardly rises to the level of a constitutional violation.  In United States v. Grover, 119 F.3d 850, 852 (10th Cir.1997), the claimant/defendant filed a motion for the return of property that was subject to forfeiture under the terms of a forfeiture agreement executed with a plea agreement on the grounds that he surrendered possession of the property, and not

ownership, and that it was the government's obligation to complete the transfer of ownership by instituting a civil forfeiture. Id.  Because the limitations period had expired, Furthermore, Plaintiff Grover contended that the government could no longer institute a civil forfeiture, and therefore, legal ownership of the property was never transferred to the government.  The Tenth Circuit held that claimant was not entitled to the return of property despite the government's failure to commence forfeiture proceedings.  The Court further held that Mr. Grover agreed not to contest the forfeiture in return for the benefits of a plea agreement.  The Court held that Mr. Grover was asking the court to ignore his own breach of the agreement, while at the same time asking the court to treat the government's admitted mistake as if it nullified any obligations he had under the agreement.

In the present case, Plaintiff Miller entered into a stipulated order of forfeiture contemporaneous with his plea agreement, thus giving up his right to the procedure under the New Mexico Forfeiture Act.  Plaintiff Miller is now trying to claim back his property by alleging procedural due process violations.  Like Mr. Grover, Plaintiff is trying to void or nullify his plea agreement through the backdoor for Defendants' failure to follow the letter of the Forfeiture Act.  Therefore, the reasoning of Grover should be applied in this case as well and, accordingly, Plaintiff's claim for violation of procedural due process has very little or no merit.

This issue has not been addressed in New Mexico; however, the State of Ohio addressed a similar issue and ruled that when "a defendant enters into a plea agreement, and clearly has notice of and agrees to the forfeiture of his property, the procedural requirements of the forfeiture act need not be followed in order to comport with due

process." State v. Whitmore, 834 N.E.2d 833 (Ct. App. Ohio 2005); State v. Gladden, 620 N.E.2d 947 (Ct. App. Ohio 1993).  In both Whitmore and Gladden, the Courts held that because the relinquishment of the ownership of property (through plea agreements) is effectuated by a plea agreement, and not under statutory provisions governing forfeiture, adherence to statutory forfeiture procedure is unnecessary.  See Whitmore, 834 N.E.2d 833.

Therefore, any alleged failure by any Defendant to initiate a Complaint in Forfeiture has no effect on any property interest held by Plaintiff and Plaintiff has no standing to complain of any purported statutory violation.

**ii.     Plaintiff Failed to Allege a Procedural Due Process Violation**

Even assuming Plaintiff has standing to pursue a procedural due process claim, he has failed to allege a viable property interest under the Fourteenth Amendment.  The Fourteenth Amendment provides, "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.' " Dusenbery v. United States, 534 U.S. 161, 167 (2002) (quoting United States v. James Daniel Good Real Property, 510 U.S. 43, 48 (1993)).  "There is no question that deprivation of property without due process gives rise to a claim under § 1983." Montana v. Hargett, 84 Fed. Appx. 15, 16 (10th Cir.2003) (citing Gillihan v. Shillinger, 872 F.2d 935, 939 (10th Cir.1989).  To determine if a plaintiff was denied procedural due process, the Court must conduct a two-part inquiry: "(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."   Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir.1999).  "The existence of a property interest is defined by existing rules or

understandings that stem from an independent source such as state law." Id., 168 F.3d at 1189 (quoting Driggins v. City of Oklahoma City, 954 F.2d 1511, 1513 (10th Cir.1992). Therefore, to establish a procedural due process violation, Plaintiff must establish protected property interest.

> **a)      Plaintiff failed to Establish a Property Interest in Three of the Nine Vehicles**

Plaintiff is claiming a due process property right in relation to nine vehicles; however, three of the vehicles are irrelevant to this litigation.  Although a search warrant was issued, the 2001 Cadillac Deville, VIN 1G6KD54Y71U281785, was never located by the Albuquerque Police Department, and therefore never towed as a part of the criminal investigation against Plaintiff.  [Undisputed fact ¶ 16]    As such, there is no basis for Plaintiff's property claims in relation to this vehicle against City Defendants.

The 1995 Suzuki Sidekick, VIN 2S3TD03V2S6405443, and the 1994 Cadillac Seville, VIN 1G6KS52Y3RU809844, are also irrelevant to Plaintiff's claims because Plaintiff was not the owner of the vehicles at the time of their disposal.  Mary Mochan was the registered owner of the Suzuki Sidekick and Thomas N. Brady or Monica E. Brady was the registered owner of the Cadillac Seville.  [Undisputed Fact ¶ 15]  Because he was not the owner of these particular vehicles, Mr. Miller cannot maintain a due process property claim regarding this property.

> **b)      Plaintiff Has No Property Interest in the Remaining Six Vehicles**

Plaintiff acquired the remaining six vehicles with misappropriated money.  It is undisputed that Plaintiff pled guilty to the misappropriation of funds from Roberta Beale, as well as fraud and racketeering. [Undisputed Facts ¶ 6,7].  There is no basis in New

Mexico state law which affords Plaintiff a property interest in vehicles which were acquired through fraud and embezzled funds, even where Plaintiff was the title holder in the Motor Vehicle Department records.

In the present case, Plaintiff admitted in the underlying criminal case that he embezzled and misappropriated money from Roberta Beal. [Undisputed Facts ¶ 6,7]. Moreover, in the Stipulated Order to Forfeit, Plaintiff agreed to forfeit: (1) all vehicles purchased using Roberta Beale's money; (2) all computers used in the operation of both Racketeering schemes charged in CR 2006-3283 and CR 2007-3870. [Undisputed Facts ¶ 10,11]

Accordingly, Plaintiff cannot establish that he has an enforceable property interest in the vehicles (remaining six) at issue in this litigation because the vehicles were all purchased with funds embezzled from Roberta Beale and the equitable property rights in the vehicles accrue to Ms. Beale.  New Mexico law's adoption of the doctrine of constructive trust defeats any claim of property interest in the vehicles by Plaintiff.

A court will impose a constructive trust "to prevent the unjust enrichment that would result if the person having the property were permitted to retain it."  In re Estate of Duran, 2003-NMSC-008, ¶ 34, 133 N.M. 553, 66 P.3d 326.  Courts have held that certain conduct, "such as fraud, constructive fraud, duress, undue influence, breach of a fiduciary duty, or similar wrongful conduct[,]" may warrant the imposition of a constructive trust. Id. (quoted authority omitted). "If a court imposes a constructive trust, the person holding legal title is subjected to an equitable duty to convey the property to a person to whom the court has determined that duty is owed."  Id.  Conduct such as fraud, duress, undue influence, breach of fiduciary duty may warrant imposing a constructive trust.  Gushwa v.

<u>Hunt</u>, 145 N.M. 286, 197 P.3d 1, 2008 -NMSC- 064.  Because Plaintiff's legal title was obtained through (fraud) and other wrongful acts, he therefore lacks standing to pursue a remedy deprivation of constitutional injury, i.e. procedural due process violations.

Similarly, New Mexico's Racketeering Act seeks to eliminate the infiltration and illegal acquisition of legitimate economic enterprise by racketeering practices and the use of legal and illegal enterprises to further criminal activities. NMSA § 30-42-2. Importantly, any property interests obtained in violation of the Racketeering Act shall be forfeited to the State of New Mexico.  NMSA § 30-42-4(E).  Plaintiff pled guilty to racketeering and, therefore pursuant to state statute, forfeited any property interest he may have had to the State of New Mexico.  New Mexico's fraud statute defines fraud as the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations. NMSA § 30-16-6 (emphasis added).  By definition, property obtained through fraud is property which belongs to another i.e. belonging to Roberta Beale and not Plaintiff.  Thus, Plaintiff does not have a property interest under New Mexico law in vehicles which he obtained through fraud and embezzlement.  Absent a constitutionally protected property right, he cannot maintain a due process claim based on the alleged improper taking or sale of the vehicles.

**B.      City Defendants Did Not Violate a Clearly Established Right**

Where the affirmative defense of qualified immunity is properly raised, it is the plaintiff's burden to convince the court that the law is clearly established:  A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly

established at the time of the conduct at issue. <u>Lutz v. Weld County School Dist. No. 6</u>, 784 F.2d 340, 343 (10th Cir. 1986); <u>Davis v. Scherer</u>, 468 U.S. 183, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984). Plaintiff's failure to do so, however, does not raise a jury question, but rather calls for entry of judgment in favor of the defendants who have plead the defense.

The Tenth Circuit held that the violation of state law will not turn an otherwise constitutional action into a violation of Section 1983. <u>Romero v. Bd. of County Comr's of County Lake</u>, 60 F.3d 702, 704 (10th Cir.1995) ( "[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim."); <u>see also</u> <u>Tanberg v. Sholtis</u>, 401 F.3d at 1167 ("Even if [the defendant officer] violated the SOPs, this violation would not create a violation of a clearly established constitutional right ex nihilo."); <u>Medina v. Cram</u>, 252 F.3d at 1133 (excluding expert affidavit which stated that the "officers' use of force did not conform with accepted police guidelines and practices" because "claims based on violations of state law and police procedure are not actionable under § 1983."); <u>Wilson v. Meeks</u>, 52 F.3d at 1554 ("[V]iolation of a police department regulation is insufficient for liability under section 1983.").

In the present case, Plaintiff merely alleges that Defendants' failure to follow the New Mexico Forfeiture Act constitutes violation of his procedural due process rights. This Court must grant summary judgment because Plaintiff's claims refer only to non-compliance with state law and City Defendants are entitled to qualified immunity.

In <u>Giuffre v. Bissell</u>, 31 F.3d 1241 (3rd Cir. 1994), the Third Circuit Court of Appeals dealt with a case where an arrestee brought suit against a prosecutor and other officials alleging due process constitutional violations arising from a situation where he

agreed to forfeit certain property and cooperate in exchange for an agreement not to prosecute him on drug charges. Id. at 1257.  Among the allegations of the arrestee was the claim that police forced the deal on him. Id. at 1249.  The Court readily disposed of Plaintiff Giuffre's procedural due process claim because he failed to allege a violation of clearly established federal law. Id. at 1257.  According to the Third Circuit "[h]is argument is predicated on an alleged violation of the procedures established under New Jersey law governing civil forfeiture." Id.  The Court held "that violations of state law, however, are insufficient to state a claim under § 1983." Id. (citing Kulwicki, 969 F.2d at 1468).  The present case is very much analogous to Giuffre, as Plaintiff Miller claims his procedural due process rights were violated because City Defendants failed to follow the New Mexico Forfeiture Act provisions.  Because Plaintiff has predicated his constitutional procedural due process claim on a violation of state law (violation of the New Mexico Forfeiture Act), like Giuffre, Plaintiff cannot maintain a viable claim. Romero v. Bd. of County Comr's of County Lake, 60 F.3d 702, 704 (10th Cir.1995).  Moreover, like the officers in Giuffre, the individual City Defendants are entitled to qualified immunity as to any claim asserted by Plaintiff Miller alleging a violation of procedural due process under New Mexico State Statutes (Forfeiture Act).

It is important to note that courts in other jurisdictions have recognized agreements in which criminal defendants plead guilty to specific charges and forfeit property as part of the plea process. See, e.g., United States v. Jeronimo, 398 F.3d 1149 (9th Cir. 2005); Paul v. United States, 929 F.2d 1202 (7th Cir. 1991); State v. Reed, 2008 WL 853529 (Ohio, 2008); State v. Davis, 886 N.E.2d 916 (Ohio, 2008); State v. Gaines, 612 N.E.2d 749 (Ohio, 1992); State v. Hendrix, 985 S.W.2d 878 (Mo. 1998).  For

instance, in <u>Davis,</u> the prosecutor, as part of a plea bargain, reduced the charge to a misdemeanor in exchange for the forfeiture of an automobile.  In a case involving an action seeking the return of cash forfeited pursuant to S.C. Code Ann. § 16-19-80 as part of a plea agreement by gambling suspects, the State Court of Appeals in <u>Hackworth v. Greenville County</u>, 637 S.E.2d 320 (S.C. Ct.App. 2006) found that the defendants agreed to forfeit gambling proceeds in exchange for a plea to a lesser charge. As a result, the Court found that defendants "…enjoyed the full benefit of that agreement and cannot now bring suit to recover the money."  637 S.E.2d at 323.   Thus, because Plaintiff Miller agreed to forfeit property as part of his plea agreement, the individual City Defendants did not violate clearly established law in not following the procedures established under the New Mexico Forfeiture Act and they are entitled to qualified immunity.

### III.   City Defendants did not Personally Participate in the Forfeiture of Plaintiff's Vehicles

After City Defendants seized the eight vehicles in question, they were towed to the storage lots of Acme Towing and Dugger's Towing.  [Undisputed Facts ¶ 13]  The lot owners filed Notices of Mechanic's or Landowner's Liens, which were sent to the registered owners of the vehicles. [Undisputed Facts ¶¶ 13-15]  Thereafter, the lot owners sold the vehicles to themselves at public auctions.  <u>Id</u>.  City Defendants were not involved with the sale or disposal of any of the vehicles at issue.  [Unisputed Facts ¶¶ 13-15]  Accordingly, Plaintiff cannot maintain any claims against the City Defendants with respect to any perceived improprieties in this process.  <u>See B. Willis, C.P.A., Inc. V. BNSF Ry</u>. Corp., 531 F.3d 1282, 1305, fn. 27 (10th Cir. 2008).  In order to state a 42 U.S.C. § 1983 claim, a plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. (citation omitted).  Id.

As stated above, City Defendants were not involved in the liens, notices or sale of these vehicles. [Undisputed Facts ¶¶ 13-15, 19]  City Defendants had no knowledge that Plaintiff's then attorney was inquiring regarding the status of these vehicles.  [ Undisputed Facts ¶ 20]   As stated by Sergeant Barreras, it is axiomatic that once the criminal case is filed, APD officers and the City did not participate personally or otherwise play a meaningful role in the forfeiture of Plaintiff's property.  [Undisputed Facts ¶ 19]   Therefore, City Defendants are not liable for any constitutional violations and should be granted summary judgment.

## IV.    Plaintiff Cannot Assert a Claim For Conversion Against City Defendants

Plaintiff alleges that Defendants converted Plaintiff's property without compensation.  [See Doc 62., Am. Civ. Compl. ¶ 15]  In New Mexico, an action for conversion sounds in tort.  Townsend v. State ex rel. State Highway Dept., 117 N.M. 302, 303, 871 P.2d 958 (1994) (conversion is an action that sounds in tort) citing Restatement (Second) of Torts, 222A (1965).   Conversion is not a tort for which immunity has been waived by the Tort Claims Act. NMSA 1978, §41-4-12; Townsend v. State ex rel. State Highway Dept., 117 N.M. 302, 304, 871 P.2d 958 (1994) (Conversion...[is] not a tort[] for which immunity has been waived by the Act).   Because immunity has not been waived, Plaintiff cannot maintain a claim for conversion against City Defendants.

For these reasons, City Defendants respectfully request this Court enter judgment in their favor, dismiss all claims against them with prejudice, and award any such other and further relief as this Court deems just and proper.

Respectfully submitted,

**CITY OF ALBUQUERQUE**
Office of the City Attorney


*/s/ Benjamin I. Sherman*
Benjamin I. Sherman
Lalita Devarakonda
Assistant City Attorneys
P.O. Box 2248
Albuquerque, NM  87103
(505) 768-4500
*Attorneys for City Defendants*


**I HEREBY CERTIFY** that on the 20th day of
June, 2011, I filed the foregoing electronically through
The CM/ECF system and on the 21st day of June, 2011, I
mailed a copy of same via U.S. Mail to:

Andrew J. Miller
Inmate #45833
GCCF
P.O. Box 520
Santa Rosa, NM  88435
*Plaintiff Pro Se*


**I HEREBY CERTIFY** that on the 20th day of
June, 2011, I filed the foregoing electronically through
The CM/ECF system, which caused the following parties
Or counsel to be served by electronic means, as more
Fully reflected on the Notice of Electronic Filing:

Robyn Hoffman
Stephen G. French
Megan T. Muirhead
500 Marquette Avenue, NW, Suite 500
Albuquerque, NM  87102
(505) 843-7075
*Attorneys for DA Defendants*

Michael Hart
1801 Rio Grande Blvd. NW, Suite A
Albuquerque, NM  87104-2566
(505) 343-1776
*Attorney for Plaintiff-in Intervention Roberta Beale*


*/s/ Benjamin I. Sherman*
Benjamin I. Sherman
Assistant City Attorney